IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MICHAEL ANTHONY HODGES,

   Plaintiff,

vs.         CASE NO. 1:16-cv-22-WTH-GRJ

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

   Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for supplemental security income ("SSI") benefits under Title

XVI of the Social Security Act ("the Act"). (ECF No. 1.) The Commissioner

has answered (ECF No. 9), and both parties have filed memorandums

outlining their respective positions. (ECF Nos. 19, 22.) For the reasons

discussed below, it is recommended that the Commissioner's decision be

reversed and remanded under sentence four of 42 U.S.C. § 405(g).

_____

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 23, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill
should be substituted for former Acting Commissioner of Social Security, Carolyn W.
Colvin, as Defendant in this matter. The **Clerk** is directed to correct the docket
accordingly

# I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI benefits under Title XVI on May 11, 2012, alleging a disability onset date of May 11, 2012. (R. 157–62.) Plaintiff alleged several impairments, including back and neck injury, arthritis, carpel tunnel syndrome, a torn disc, whiplash, high blood pressure, acid reflux problems, and depression. (R. 187.) His applications were denied initially and upon reconsideration. (R. 70–81, 83–97.) Following a hearing on May 20, 2014, an administrative law judge ("ALJ") issued a partially favorable decision to Plaintiff on July 11, 2014. (R. 19–30.) The Appeals Council denied Plaintiff's request for review on December 7, 2015. (R. 1–4.) Thus, on February 2, 2016, Plaintiff filed the instant appeal to this Court. (ECF No. 1.)

# II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. §§ 404.1505, 416.905 (2012).[2] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do

---

[2] All further references to 20 C.F.R. will be to the 2012 version, unless otherwise specified.

basic work activities, then he does not have a severe impairment and is not disabled.§ 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 416.920(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. § 416.920(e). Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 416.920(f)–(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

## III.  SUMMARY OF THE RECORD

## A.  Medical Evidence

On November 21, 2010, Plaintiff reported to Shands at Lake Shore Hospital after being involved in a motor vehicle accident. He had injuries to his head, neck, and upper and lower back and reported a high pain level. Plaintiff was assessed with acute cervical, dorsal, and lumbar myofascial strain, confusion, and a closed head injury. (R. 262.)

In December 2010, Plaintiff presented to Acorn Medical Clinic ("Acorn MC"), complaining of severe neck pain, right sided head pressure, and depression. (R. 429.) Plaintiff subsequently began treating with Dr. Lawrence Restieri at High Springs Family Chiropractic for neck, back, and shoulder pain, which resulted in some improvement of Plaintiff's pain. (R. 382–415.)

At a follow-up with Acorn MC in July 2011, Plaintiff was ambulatory and looked well. (R. 425.) Plaintiff returned to Acorn MC for another follow-up on August 4, 2011. He complained of low back pain that he had for years but stated that he has had no progression of symptoms. (R. 423.)

On September 14, 2011, Plaintiff had MRIs taken of his lumbar spine and cervical spine. The lumbar spine MRI revealed an L5–S1 bulging disc with disc protrusion with annular tear and bilateral facet arthropathy with mild foraminal narrowing bilaterally, an L4–5 bulging disc and facet arthropathy bilaterally with mild foraminal narrowing bilaterally, an L3–4 bulging disc and bilateral facet arthropathy with moderate foraminal narrowing bilaterally and a small, 4-millimeter right lateral disc protrusion, and an L2–3 bulging disc and facet arthropathy with mild foraminal narrowing bilaterally. (R. 365–66.) The cervical spine MRI revealed a C4–5

bulging disc with 2-millimeter disc protrusion with mild canal stenosis and mild foraminal narrowing bilaterally, a C5–6 bulging disc with mild foraminal narrowing, and a C3–4 bulging disc with mild foraminal narrowing bilaterally. (R. 367–68.)

Plaintiff reported to the emergency room at North Florida Regional Medical Center in December 2011 for pain in both feet. Examination revealed mild soft tissue tenderness in the right and left lumbar paraspinous region of his back but a normal range of motion. There was no erythema, swelling, laceration, abrasion, ecchymosis, or deformity of the feet. He had moderate tenderness of the proximal plantar aspect of the mid foot in both feet. Plaintiff also demonstrated a mild limping gait. Plaintiff was diagnosed with bilateral plantar fasciitis and shown stretching exercises. He was instructed to apply ice intermittently for 4 to 6 times a day, get orthotic inserts for his shoes, do the stretching exercises daily, and follow up with podiatry. (R. 373–77.)

Plaintiff returned to Acorn MC on April 19, 2012. He was ambulatory and looked in his usual state of health. Plaintiff complained of pain at the base of his right great toe that he did not mention before but had intermittently over the last year. (R. 421.)

On July 31, 2012, Plaintiff returned to Acorn MC for stiffness and pain in multiple joints. He reported that most recently the pain was in his left wrist from pushing with his hands to ease the load on his ankles and knees when arising from sitting. On examination Plaintiff was in no apparent distress, walked with a slow gait, and sit and stood without difficulty. There was no undue swelling or deformity, heat, or crepitus to any of his major joints. He demonstrated an active range of motion in his extremities. Although his finger joints were slightly swollen there was no heat or crepitus. Plaintiff was diagnosed with degenerative arthritis. (R. 461–63.)

On August 18, 2012, Plaintiff was referred to Walter Morgan, M.D., for a consultative examination. Plaintiff reported that his back problems began in 1991 when he fell into a six foot hole at work. He stated that three to four years ago he developed numbness in the left leg from the back down to the left foot, followed by numbness in the right hip. Plaintiff said he sometimes uses a cane to walk. He reported taking Tramadol for pain, which helps some. Plaintiff further reported neck problems for his accident in 2011, from which he says he has limited range of motion in his neck. In

addition, Plaintiff reported severe, chronic pain of the arms and hands, as well as an arthritic type of pain in other joints that is taking over his body. He also reported recently he was diagnosed with bilateral plantar fasciitis.

Plaintiff told Dr. Morgan that he can stand and sit for 15 minutes in one hour and cannot climb stairs. He is able to feed and dress himself but does not drive a car or do housework or yardwork.

On examination, Plaintiff appeared to be in no acute distress. He was, however, wearing a C-collar and back brace. The examination was limited due to pain. Plaintiff's blood pressure was 158/105. Musculoskeletal examination revealed no muscle asymmetry, atrophy, involuntary movements, or erythema. Plaintiff did have crepitus at both knees with tenderness to palpation over the knee and small joint effusions. He also had decreased range of motion of the cervical spine and lumbar spine. There was no paravertebral muscle spasms or tenderness along the spine. In addition, all other ranges of motion were normal. Plaintiff's gait was normal and he was able to rise from a sitting position without assistance. He could not, however, stand on his tiptoes, heels, or perform tandem gait without problems. Plaintiff had tenderness of the feet with minimal

palpation and could not stand on his feet due to pain.

Plaintiff demonstrated 5 out of 5 grip strength with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. He had no edema, cyanosis, or erythema in his extremities.

Neurological examination revealed strong neck movement against resistance and good shoulder shrug. The strength exam was limited due to pain in the left arm. There was some weakness of the right arm, at best four out of five with extension of the elbow and shoulder, but five out of five bilaterally in all other muscle groups. Plaintiff also displayed good tone in his muscles. He had normal reflexes but refused testing of plantar reflexes. Although Rhomberg testing could not be safely performed, Plaintiff demonstrated intact light touch, pain, and position throughout his body.

Dr. Morgan also took two x-rays of Plaintiff's lumbar spine. The x-rays revealed moderate osteophytosis intervertebral disc space at L3–L4, L4–L5, and L5–S1. There was no significant disc space narrowing noted nor were any fractures, subluxations, or other acute bony abnormalities identified. Dr. Morgan diagnosed Plaintiff with: (1) cervical spine disc disease; (2) lumbar spine disc disease; (3) depression; (4) hypertension;

and (5) history of plantar fasciitis. (R. 431–36.)

In November 2012, Plaintiff returned to Acorn MC for a follow-up. Plaintiff reported generally feeling well. He was alert and oriented and in no apparent distress. Plaintiff was instructed to eat a healthy diet and exercise. (R. 467–68.)

Then on June 23, 2013, Plaintiff suffered a right shoulder injury during an altercation with another man at work. (R. 470, 498.) He reported to the emergency room the following day for head, neck, and shoulder pain. He was independently ambulatory with the use of a cane. (R. 505.) Plaintiff denied having thoracic pain, lumbar pain, or a gait problem. Other than tenderness and a decreased range of motion due to pain, his right shoulder was normal upon examination. There was also no tenderness in his back. (R. 498–501.)

An x-ray was taken of his shoulder, as well as CT scans of his cervical spine and brain. The x-ray revealed moderate degenerative change of the acromioclavicular joint and mild degenerative change of the glenohumeral joint. There was, however, no fracture, dislocation, subluxation, or abnormal soft tissue calcification.

The cervical spine CT scan revealed very mild degenerative disc changes but no significant facet degeneration, major disc herniation, or evidence of acute spinal canal compromise. There was also chronic-appearing calcifications/ossification, suggesting an old ligamentous injury. Nonetheless, there was no evidence of acute traumatic injury to the cervical spine. Similarly, there were no acute intracranial findings on the brain CT scan. (R. 444–47, 501–03, 513–15.) Plaintiff was assessed with cervical paraspinal muscular strain, head injury, and shoulder pain. (R. 501–03, 518–24.)

In August 2013, another MRI of Plaintiff's right shoulder revealed a large tear of the subscapularis tendon, hypertrophy, and some mild impingement. (R. 448–49.) Plaintiff then underwent shoulder surgery in November 2013. (R. 538.)

## B.  Opinion Evidence

### 1.  Dr. Morgan

Based on his August 18, 2012 consultative examination, Dr. Morgan opined that Plaintiff is restricted to no prolonged standing for more than 30 minutes without rest, and no heavy lifting or carrying of objects weighing

more than 20 pounds. Further, Dr. Morgan concluded that Plaintiff should

be able to hold a conversation, respond appropriately to questions, and

carry out and remember instructions.

Dr. Morgan noted that Plaintiff may benefit from physical therapy,

appropriate pain regiment, and weight loss. In addition, he found that

although Plaintiff was not unsteady when walking short distances, he may

benefit form an assistive device when walking more than 50 yards. (R.

431–36.)

### 2.  Dr. Stanley

On November 18, 2012, Bettye Stanley, D.O. ("Dr. Stanley"), a

Disability Determination Services consultant, completed a physical residual

functional capacity assessment ("PRFCA") for Plaintiff. Dr. Stanley opined

that Plaintiff could occasionally lift and/or carry 20 pounds and frequently

lift and/or carry 10 pounds. Plaintiff could stand and/or walk for 6 hours in

an 8-hour workday and sit for 6 hours in an 8-hour workday. Plaintiff's

ability to push and/or pull was limited in his right upper extremities but he

could frequently reach overhead. Plaintiff had no limitations with respect to

balancing, kneeling, or crouching. He could also frequently climb ramps/

stairs, stoop, and crawl, but could only occasionally climb

ladders/ropes/scaffolds. (R. 91–92.)

## C.  Other Evidence

Plaintiff was employed by Land-AGRE Business, Inc., from May 30,

2013 through June 23, 2013, as a clean-up person sweeping and picking

up trash. (R. 235.)

## D.  Hearing Testimony

At the hearing on May 20, 2014, Plaintiff, born July 14, 1958, was 55

years old. (R. 41.) In May 2012, Plaintiff was performing seasonal work

cleaning up debris from around a building at a watermelon packing house.

(R. 42.) The job required Plaintiff to lift up to 70 pounds and be on his feet

walking, bending, and stooping. (R. 43.) He had been working there for

approximately five years both full time and part time. (R. 42.) Prior to that,

however, he had not worked for some time due to lower back pain. (R. 43.)

Plaintiff has pain in his neck, right shoulder, and lower back. (R. 44.)

The neck pain persists on a daily basis, manifesting as a nagging sharp

pain on the right side of his neck. (R. 45.) The neck pain is usually an 8 or

9 out of 10 and nothing makes it better. (*Id.*) The shoulder pain is

intermittent, but every day, and ranges at a 7 or 8 out of 10. (*Id.*) He injured

his shoulder during an altercation with a co-worker while working at the

packing house. (R. 55.) His lower back pain is constant and it ranges from

an 8 to 9 out of 10. (R. 46.)

In late 2010 or early 2011 Plaintiff was also diagnosed with bilateral

plantar fasciitis in his feet, which causes excruciating pain on a daily basis,

all day. (R. 44, 59.) Doctors did not give him any treatment for the plantar

fasciitis but told him that if it did not get better within a year or two to return

to the emergency room or seek other medical help. (R. 59.) Plaintiff tried

using shoe inserts but they did not help. (R. 60.) He has not gone back to

the emergency room yet but plans to do so within the next day or two. (R.

59–60.)

Plaintiff can only stand in one place for 20–30 minutes before he has

to sit down. (R. 44.) He can sit without pain for approximately 45 minutes,

but then he has to get up, stretch, and move around. (R. 44–45.) Since

May 2012, Plaintiff has been able to lift little to nothing; nothing more than

a gallon of milk or loaf of bread with his left hand. (R. 46.) He could,

however, hold and use a hammer with his left hand. (R. 53–54.)

Nonetheless, Plaintiff is right handed (R. 41.) He could probably use the hammer with his right hand but not for very long. (R. 54.) At this point, however, because his shoulder is not healed from surgery yet he would not attempt to use a hammer with his right hand. (R. 54.) Plaintiff can reach overhead with his left arm but not his right and can stoop and squat very briefly. (R. 55.) He can also pick up small items with his fingers but not very well. (*Id.*)

Plaintiff stopped driving in 2012 because his license was suspended for failing to pay tickets. (R. 50.) If his license was reinstated, however, he could still drive. (*Id.*) Plaintiff periodically cooks and although he does not clean or do laundry because his fiancé does these tasks, he could clean and do laundry if he absolutely had to. (R. 50–51.) He has not been able to do yard work since 2008 or 2009. (R. 51.) Plaintiff does not have any hobbies and is "kind of a couch potato kind of guy." (*Id.*) He watches television approximately 20 hours a day. (*Id.*) He can follow a one-hour television show from beginning to end. (R. 52.) He also takes a couple of naps during the day for approximately 20–25 minutes. (*Id.*) Plaintiff, has trouble sleeping at night. (*Id.*) He tosses and turns because of his neck,

shoulder, and back pain. (R. 52–53.) His feet also throb on and off all night. (R. 53.) On average he only gets about four hours of sleep a night. (R. 52.)

He can walk approximately 75 yards at a slow to slow-medium pace. (R. 53.) He tries to stay away from stairs. (*Id.*) Before his shoulder injury, sometimes he would go fishing and grocery shopping. (R. 49.) If his fiancé was in the grocery store too long Plaintiff would go back to the car to sit down. (R. 50.) At one point he was using the motorized scooter cart at the grocery store to shop because his feet hurt. (*Id.*)

## E.  The ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 11, 2012. (R. 21.) The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, hypertension, an affective mood disorder, an anxiety-related disorder, a somatoform disorder, and a history of substance abuse. (*Id.*) The ALJ went on to find at step three of the sequential evaluation that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.

(*Id.*)

With respect to Plaintiff's residual functional capacity at step four of the sequential evaluation, the ALJ determined that prior to June 23, 2013, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with additional restrictions. (R. 24.) He found that Plaintiff could lift and carry up to 20 pounds on an occasional basis and 10 pounds on a frequent basis, stand and/or walk for 6 hours of an 8-hour workday, and sit for 6 hours of an 8-hour workday. (*Id.*) Further, the ALJ found that Plaintiff could reach overhead, stoop, crawl, and climb ramps and stairs on a frequent basis, but only climb ladders, ropes, and scaffolds on an occasional basis. (*Id.*) Finally, the ALJ concluded that Plaintiff could only perform simple, routine tasks and must avoid the general public and teamwork. (*Id.*)

The ALJ determined that beginning on June 23, 2013, Plaintiff had the RFC to perform light work with additional restrictions. (R. 27.) Specifically, in addition to the restrictions imposed prior to June 23, 2013, Plaintiff could not use his right arm. (*Id.*)

The ALJ concluded at step four that Plaintiff was unable to perform

any past relevant work. (R. 28.)

At step five, the ALJ determined that prior to June 23, 2013, based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*) The ALJ found, however, that beginning on June 23, 2013, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 29.) Thus, the ALJ concluded that Plaintiff was not disabled prior to June 23, 2013, but became disabled on that date and continued to be disabled through the date of his decision. (R. 30.)

## IV.  DISCUSSION

Plaintiff raises one issue on appeal: Whether, in light of the opinion of consultative examiner Dr. Morgan, substantial evidence supports the ALJ's finding that Plaintiff had the RFC to perform a reduced range of light work prior to June 23, 2013. (ECF No. 19 at 16–17.)

At Step Four the ALJ must assess the claimant's RFC and his ability to return to his past relevant work. § 404.1520(a)(4)(iv). The ALJ must take the claimant's medical evidence and other evidence into consideration in

his RFC analysis. § 404.1520(e). If a claimant cannot return to his past

relevant work, the ALJ moves onto Step Five to determine if the claimant

can adjust to other work. *Id.*; *Phillips v. Barnhart*, 357 F.3d 1232, 1238

(11th Cir. 2004).

In this case, at Step Four the ALJ determined that prior to June 23,

2013, Plaintiff had the RFC to perform a limited range of light work:

> [T]he claimant is capable of: lifting and carrying up to 20
> pounds on an occasional basis and 10 pounds on a frequent
> basis; standing and/or walking for six hours during the course
> of an eight-hour workday; sitting for six hours during the course
> of an eight-hour workday; reaching overhead, stooping,
> crawling, and climbing ramps and stairs on a frequent basis;
> and climbing ladders, ropes and scaffolds on an occasional
> basis. Despite moderate mental restrictions . . . the claimant is
> able to perform simple routine tasks only, and must avoid the
> general public and teamwork.

(R. 24.) The ALJ gave a lengthy explanation as to why he determined that

Plaintiff could perform "light work" with additional restrictions prior to June

23, 2013. In addition to various objective medical evidence, the ALJ also

pointed to opinion evidence to support his position. One of the opinions the

ALJ discussed was Dr. Morgan's opinion.  The ALJ explained:

> Dr. Morgan's Consultative Examination Report supports the
> conclusion that the claimant is capable of performing light
> exertional work (Exhibit B11F). The undersigned also notes that

> Dr. Morgan's only limitations were exertional, which supports
> the conclusion that the claimant could perform work within the
> postural and manipulative limitations outlined in the residual
> functional capacity assessment.

(R. 26.)

Plaintiff argues that Dr. Morgan's report does not support the

conclusion that Plaintiff is capable of performing light exertional work

because Dr. Morgan opined that Plaintiff "may benefit from an assistive

device when walking more than 50 yards," and that Plaintiff is "restricted to

no prolonged standing for more than 30 minutes without rest . . . ." (R.

434.) Plaintiff further argues that the ALJ erred in failing to explain the

reason for not crediting these aspects of Dr. Morgan's opinion. The Court

agrees.

The Court cannot make meaningful review of the ALJ's RFC finding

in light of Dr. Morgan's opinion. An ALJ is required to "state with

particularity the weight he gave different medical opinions and the reasons

therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *Winschel*

*v. Comm's of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011)

("whenever a physician offers a statement reflecting judgments about the

nature and severity of a claimant's impairments . . . what the claimant can

still do despite his . . . impairments, and the claimant's physical . . .

restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor"). This requirement "applies equally to the opinions of treating physicians and non-treating physicians." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing *Winschel*, 631 F.3d at 1179). An ALJ's failure to specify what weight he gives to a consulting physician's report and the reasons why he either credits or discredits the findings is reversible error. *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006); SSR 96-8p, 1996 WL 374184, at *7 (1996) ("If the RFC assessment conflicts with an opinion from a medical sources, the adjudicator must explain why the opinion was not adopted."). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *McClurkin*, 625 F. App'x at 962 (citing *Winschel*, 631 F.3d at 1179).

The ALJ wrote that "Dr. Morgan's Consultative Examination Report supports the conclusion that the claimant is capable of performing light exertional work." (R. 26.)  As an initial matter, the ALJ failed to state with particularity the weight he gave Dr. Morgan's opinion. Merely stating that

the report supports the RFC lends little insight into the ALJ's reasoning.

In addition to his failure to state with particularity the weight he gave

Dr. Morgan's opinion, the ALJ also failed to provide any explanation

supporting this conclusion. According to the social security regulations,

"light work" is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds. Even though the
> weight lifted in a particular light job may be very little, *a job is in
> this category when it requires a good deal of walking or
> standing*—the primary difference between sedentary and most
> light jobs. A job is also in this category when it involves sitting
> most of the time but with some pushing and pulling of arm-hand
> or leg-foot controls, which require greater exertion than in
> sedentary work . . . .

SSR 83-10, 1983 WL 31251, at *5 (1983) (emphasis added).

The ALJ found, in part, that Plaintiff could stand and/or walk for six

hours during the course of an eight-hour workday. On the other hand Dr.

Morgan opined that Plaintiff was limited to "no prolonged standing for more

than 30 minutes without rest." (R. 434.)  This type of limitation is often

referred to as a sit/stand option. *See Beasterfeld v. Comm'r of Soc. Sec.*,

480 F. App'x 514, 515 (11th Cir. 2012) (ALJ's hypothetical that included a

sit/stand option—i.e., being able to sit or stand at will—encompassed the

limitation that plaintiff be able to stop and rest when the distance or texture

of the ground made walking too difficult). Indeed, it is possible to perform light work with a sit/stand option. *See Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 787 (11th Cir. 2016) (substantial evidence supported ALJ's determination that plaintiff retained the RFC to perform light work with a sit/stand option); *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 906 (11th Cir. 2013) (determining that plaintiff's physical abilities were consistent with the ability to perform light work with a sit/stand option). The problem with the ALJ's decision is that it is unclear how Dr. Morgan's report—which includes the limitation that Plaintiff cannot stand for more than 30 minutes without rest— supports the ALJ's conclusion that Plaintiff can stand and/or walk for six hours during an eight-hour workday.[3]  The ALJ's written decision is not subject to meaningful review because the ALJ failed to provide any explanation for his finding that Dr. Morgan's opinion supports the conclusion that the Plaintiff is capable of performing light exertional work.

The ALJ went on in his written decision and stated that he "also

---

[3] Plaintiff also argues that the ALJ's RFC assessment is directly contrary to Dr. Morgan's suggestion that Plaintiff may benefit from an assistive device when walking more than 50 yards. But, reliance on this portion of Dr. Morgan's opinion is misplaced. Dr. Morgan noted that Plaintiff "was not unsteady when walking short distances, but he may benefit from an assistive device when walking more than 50 yards." (R. 434.) Dr. Morgan did not opine that Plaintiff definitively needed a cane.

notes that Dr. Morgan's only limitations were exertional, which supports the

conclusion that the claimant could perform work within the postural and

manipulative limitations outlined in the [RFC] assessment." This statement

is problematic because it provides no insight as to how the ALJ concluded

Plaintiff can perform light *exertional* work.

Exertional limitations relate to the claimant's ability to meet the

seven strength demands of a job—sitting, standing, walking, lifting,

carrying, pushing, and pulling. SSR 96-4p, 1996 WL 374187, at *2 (1996).

"Nonexertional limitations or restrictions affect an individual's ability to meet

the other demands of jobs and include mental limitations, pain limitations,

and all physical limitations that are no included in the seven strength

demands." *Phillips*, 357 F.3d at 1242 n.11 (citing SSR 96-4p). Postural and

manipulative limitations are nonexertional limitations. *Walker,* 826 F.2d at

1003 (citing 20 C.F.R. § 416.945(d)). Plaintiff's ability to perform work

within certain postural and manipulative limitations—i.e., his ability to

perform *nonexertional* work—has nothing to do with his ability to perform

*exertional* work. The ALJ's explanation, therefore, fails to provide any

insight to his statement that Dr. Morgan's report supports the conclusion

that Plaintiff can perform light *exertional* work.

Furthermore, the statement is still ambiguous even if the ALJ meant that because Dr. Morgan only found *exertional* limitations—i.e., no nonexertional limitations—Dr. Morgan's opinion supports the *nonexertional* limitations the ALJ imposed. The ALJ's RFC included the following postural limitations: "reaching overhead, stooping, crawling, and climbing ramps and stairs on a frequent basis; and climbing ladders, ropes and scaffolds on an occasional basis." (R. 24); *see Freeman v. Comm'r of Soc. Sec.*, No. 6:14-cv-1275-Orl-22JSS, 2015 WL 6438750, at *4 (M.D. Fla. Oct. 22, 2015) (noting that under the social security regulations, postural functions include stooping, climbing, crawling, crouching, kneeling, and balancing). But, the social security regulations define "frequent" as:

> *occurring from one-third to two-thirds of the time*. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, at *6 (emphasis added.) It is unclear how Dr. Morgan's

exertional finding—that Plaintiff cannot stand for more than 30 minutes without rest—supports the ability to frequently—i.e., from one third to two thirds of the time—stoop, crawl, and climb ramps and stairs.

Defendant argues that the ALJ did not adopt Dr. Morgan's finding that Plaintiff cannot stand for more than 30 minutes without rest. Thus, Defendant says perhaps the ALJ meant that Dr. Morgan's other exertional limitation regarding lifting supports the postural limitations in the RFC. Maybe so and maybe not. But the problem remains that the Court cannot make meaningful review based on such ambiguity.

Defendant asserts three arguments, neither of which remedies the problems presented. First, Defendant contends that Dr. Morgan's examination findings support the ALJ's determination that Plaintiff could perform a reduced range of light work. Defendant goes on to speculate as to the ways in which Dr. Morgan's findings support the ALJ's determination. While the evidence may indeed support the argument it is speculative for this Court to guess at what the ALJ might have concluded. As discussed, the ALJ failed to assign Dr. Morgan's opinion weight and failed to explain, without ambiguity, any supporting factors for that determination. And "when the ALJ fails to state with at least some measure

of clarity the grounds for his decision, we will decline to affirm simply

because some rationale might have supported the ALJ's conclusion."

*Winschel*, 631 F.3d at 1179 (internal quotation marks omitted).

Second, Defendant asserts that the ALJ did not adopt Dr. Morgan's

opinion that Plaintiff was limited to no prolonged standing for more than 30

minutes without rest because that restriction was not supported by Dr.

Morgan's examination findings or the other record evidence as a whole.

(ECF No. 22 at 13.) Although this may be a logical interpretation, it is

unclear from the ALJ's opinion whether that is what the ALJ found because

the ALJ failed to provide any explanation. While there is no rigid

requirement that the ALJ specifically refer to every piece of evidence in his

decision, an ALJ has a heightened duty to discuss medical opinions.

*McClurkin*, 625 F. App'x at 963 (noting that there is a difference between

discussing general objective medical evidence and discussing medical

opinions). That heightened duty was not met here.

Third, Defendant argues that substantial evidence in general

supports the ALJ's determination that Plaintiff could perform light exertional

work, including standing and/or walking for six hours in an eight-hour

workday. Despite the fact that other evidence may support the ALJ's

decision not to incorporate a sit/stand option into the RFC, the other

evidence does not resolve the ambiguities with respect to Dr. Morgan's

opinion. A reasonable interpretation of the ALJ's written decision is that he

came to the conclusion that being unable to stand for more than 30

minutes without rest is not inconsistent with the RFC. This conclusion,

however, is not so.  And nonetheless, the fact that there may be other

evidence does not absolve the ALJ from his duty to state with particularity

the weight assigned to Dr. Morgan's opinion or the reasons why he

discarded Dr. Morgan's opinion. *See McClurkin*, 625 F. App'x at 963

(reversing and remanding where ALJ failed to state with particularity the

weight assigned to the non-treating physician's opinion or the reasons why

he may have discarded her opinion).

The ALJ's failure to state with particularity the weight  given to Dr.

Morgan's opinion or the reason for discounting it, combined with the

ambiguities in the ALJ's discussion of Dr. Morgan's report, prevents this

Court from making meaningful review. Accordingly, the decision of the ALJ

should be reversed and remanded so the ALJ can properly evaluate and

explain his assessment of Dr. Morgan's consultative examination report

and, if necessary, reevaluate Plaintiff's RFC.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this Report and Recommendation.

**IN CHAMBERS** in Gainesville, Florida, on the 8th day of February, 2017.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.